[Cite as *State v. Williams*, 2010-Ohio-3279.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.  09 MA 11 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| TREMAINE WILLIAMS, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:        Criminal Appeal from
                                 Youngstown Municipal Court,
                                 Case No. 2008 CRB 2627.


JUDGMENT:                        Affirmed.


APPEARANCES:
For Plaintiff-Appellee:          Attorney Jay Macejko
                                 City Prosecutor
                                 Attorney Dana Lantz
                                 Assistant City Prosecutor
                                 26 S. Phelps Street
                                 Youngstown, OH  44503


For Defendant-Appellant:         Attorney Rhys Cartwright-Jones
                                 42 N. Phelps Street
                                 Youngstown, OH  44503


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite


                                 Dated:  June 28, 2010

DeGenaro, J.

{¶1}   This timely appeal comes for consideration upon the trial court record and the parties' briefs.  Defendant-Appellant, Tremaine Williams, appeals the decision of the Youngstown Municipal Court convicting him of one count of domestic violence pursuant to R.C. 2919.25(A) and sentencing him accordingly.  On appeal, Williams argues that the trial court erred in prohibiting defense counsel from cross-examining the victim about a possible alternative batterer.  He also claims the trial court erred by prohibiting Williams from testifying on direct examination about statements the victim allegedly made to him. Finally, he argues that even if those two errors are non-reversible individually that together they combined to create a manifest miscarriage of justice that this court should reverse pursuant to the cumulative error doctrine.

{¶2}   Upon review, Williams' arguments are meritless.  The trial court did not abuse its discretion by limiting the cross-examination of the victim, because the question asked about a past incident was not relevant to the issues in this case.  The trial court properly prohibited Williams from testifying about an out-of-court statement the victim allegedly made to him, as that statement was hearsay, not an admission of a party-opponent.  Finally, there is no cumulative error.  Accordingly, we affirm the judgment of the trial court.

## Facts and Procedural History

{¶3}   On September 5, 2008, Williams was charged by complaint with one count of domestic violence, pursuant to R.C. 2919.25(A), a misdemeanor of the first degree. This charge stemmed from allegations that he punched and grabbed his then-girlfriend Dawna Sheely who was pregnant with his child at the time of the incident.

{¶4}   Williams was arraigned, pled not guilty and did not waive his speedy trial rights. Counsel was appointed.  On November 17, 2008, a bench trial was held.  Sheely testified that she was walking home from a friend's house on the morning of September 2, 2008, when at approximately 11:00 AM, while she was near the railroad tracks on Southern Boulevard, Williams pulled up behind her, got out of his car, grabbed her by the hair and started swinging her back and forth.  He then proceeded to hit her in the face

three times. Sheely said she fell to the ground and Williams threatened her with a gun. Sheely ran away from the scene to her next-door neighbor's house, where the police and paramedics were called. She was transported to the hospital for treatment where she remained for approximately six to seven hours, having sustained bruising and cuts to her eye and face. She identified Williams in the courtroom as her attacker.

{¶5} Sheely testified she was certain she was pregnant with Williams' baby. She further stated that during the course of their relationship she lived with Williams for a one-week period, and that when she was not living with him, she stayed overnight at his house approximately three times per week. On cross, defense counsel tried to ask Sheely about whether her father had physically harmed her in the past, however an objection to that question was sustained by the trial court.

{¶6} Detective-Sergeant Brian Butler of the Youngstown Police testified about his investigation of the incident which involved interviewing Sheely and reviewing the photographs of her injuries which were taken at the hospital that day. Those photographs were admitted into evidence.

{¶7} Williams testified in his own defense, and denied the incident occurred. He claimed Sheely spent the preceding night with him at his home. More specifically, he said Sheely called him from a pay-phone across from his house on East Avondale in Youngstown at approximately 12:30 AM on September 2, 2008. Williams said he told Sheely he was not home but that she could let herself in with her key. According to Williams, he arrived home several hours later, at 3:30 AM, and found Sheely on his couch. According to Williams, Sheely already had "damage" to her face at that time, and the two discussed what was wrong with her face. Williams stated that Sheely told her the source of those bruises, but the State objected to that testimony and the trial court sustained the objection.

{¶8} After their conversation, Williams said the two retired to his bedroom and had sex. He said Sheely left the next morning on foot at approximately 11:15 AM. Williams said he left by car at that same time. Williams said he went directly to his mother's house where he showered, used the computer, watched television and washed

dishes. On cross, he admitted he was charged with assaulting Sheely on another occasion in Niles, a matter which was still pending.

{¶9} After considering all the evidence, the trial court found Williams guilty as charged. Following a hearing, the court sentenced Williams to 120 days in jail, and imposed a $250 fine, costs, and a $25 application fee. In addition, the court ordered Williams to be placed on 24 months of intensive probation following his jail term, and that Williams have no contact with Sheely. In a separate judgment entry filed that day, the court found Williams in direct contempt of court for two incidents during the sentencing hearing, and sentenced Williams to 30 days in jail for each incident, to be served concurrently. Williams did not appeal the contempt judgment.

{¶10} Williams filed a notice of appeal from the domestic violence sentencing entry with this court on January 15, 2009. He filed a motion for stay of sentence pending appeal with the trial court which he later withdrew. On December 1, 2009, we issued a limited remand because the sentencing entry did not comply with the mandates of *State v. Baker,* 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163. On January 15, 2010, the trial court issued an amended judgment entry of sentencing that complies with *Baker*.

### Limitation of Cross-Examination of the Victim

{¶11} In his first assignment of error, Williams asserts:

{¶12} "The trial court erred in inhibiting Williams' cross-examination of Ms. Sheely."

{¶13} As indicated, Sheely, the victim, testified on direct examination that Williams exited his car, grabbed her by the hair and attacked her. The defense's theory of the case was that Sheely already had bruising on her face the night before the incident, presumably from some other source.

{¶14} On cross-examination, the defense inquired about whether Sheely had some type of *past* physical altercation with her father:

{¶15} "Isn't it true that in the past Tremaine [Williams] actually had to push your father off of you?"

{¶16} The State objected and the court sustained the objection, thus prohibiting

testimony about this topic.  Williams insists the trial court erred as there was no objective basis for the ruling.  He contends that the limitation of cross-examination of the victim in this way impeded his confrontation clause rights and denied him his right to a full and fair trial.

**{¶17}** Evidentiary rulings lie within the sound discretion of the trial court, and as such will be upheld absent an abuse thereof.  *State v. Bey* (1999), 85 Ohio St.3d 487, 490, 709 N.E.2d 484.  Abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.  Under this standard of review, an appellate court is not permitted to substitute its judgment for that of the trial court on evidentiary issues.  *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 473 N.E.2d 264.

**{¶18}** Williams is correct that pursuant to Evid.R. 611(B), "cross-examination shall be permitted on all relevant matters affecting credibility."  Further, the Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees the right of a criminal defendant to confront and cross-examine adverse witnesses.  *State v. Freeman*, 7th Dist. No. 07 JE 5, 2008-Ohio-2925, at ¶11, citing *State v. McIntosh* (2001), 145 Ohio App.3d 567, 578, 763 N.E.2d 704.  However, "a criminal defendant's right to confront and cross-examine a witness is not unlimited."  *Freeman* at ¶11.  Rather, a trial court retains wide latitude under the Confrontation Clause to impose reasonable limits on cross-examination due to concerns regarding issues such as harassment, prejudice, confusion of issues, witness safety or interrogation that is repetitive or only marginally relevant. *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674.  Thus, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis sic.) *Delaware v. Fensterer* (1985), 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15."

**{¶19}** Here, the trial court's limitation of the cross-examination of the victim did not violate Williams' Confrontation Clause rights.  The defense questioned Sheely about

whether, at some unspecified time in the past, Williams had to push Sheely's father off of her. Testimony on that topic would not have been relevant. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Irrelevant evidence is inadmissible. Evid.R. 402. Testimony about a past altercation between Sheely, her father and Williams was not relevant to the determination of whether Williams assaulted Sheely on the morning of September 2, 2008. Nor would that testimony have been useful to attack Sheely's credibility. Had defense counsel posed a narrower question, for example, asking Sheely if her father had struck her that morning and caused the bruises, then we would be faced with a different situation and perhaps a different outcome. However, testimony about an alleged past altercation would not have been relevant to the issues in this case. The trial court did not abuse its discretion by limiting the cross-examination of Sheely in this instance. Accordingly, Williams' first assignment of error is meritless.

**Limitation of Williams' Direct Testimony about the Victim's Statements**

{¶20} In his second assignment of error, Williams asserts:

{¶21} "The trial court erred in inhibiting Williams' testimony as to Ms. Sheely's statements to him."

{¶22} Specifically, Williams claims the trial court erred by prohibiting him from testifying, on direct examination, about out-of-court statements Sheely allegedly made to him regarding the source of her bruises. The following exchange is at issue:

{¶23} "[Defense counsel]: It is 3:00 o'clock in the morning. As you testify, please refresh, what happened when you got home and it is 3:00 o'clock in the morning of September 2nd, what occurred at that time? You saw her [Sheely] on the couch you said?

{¶24} "[Williams]: Yes.

{¶25} "[Defense counsel]: What occurred after that?

{¶26} "[Williams]: She [Sheely] explained she got in a fight.

{¶27} "[Prosecutor]: Objection, Your Honor.

**{¶28}** THE COURT: I am going to sustain the objection. Counsel, all the testimony up to this point has been that the incident in question here occurred at or around 11:00 a.m. on Southern Boulevard as to the actual act. Could you focus in on that?" Williams contends the trial court erred by sustaining that objection. He agrees that the court, although it did not specifically so indicate, likely sustained the objection because it believed Williams' statement was hearsay. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

**{¶29}** However, Evid.R. 801(D) lists several types of statements that are considered non-hearsay. One such category involves an "admission by [a] party-opponent" which means a "statement that is offered against a party and is (a) the party's own statement, in either an individual or a representative capacity, or (b) a statement of which the party has manifested an adoption or belief in its truth, or (c) a statement by a person authorized by the party to make a statement concerning the subject, or (d) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy." Evid.R. 801(D)(2).

**{¶30}** Williams contends that pursuant to Evid.R. 801(D)(2), a defendant may relate out-of-court statements made to him by his accuser as those constitute admissions of a party-opponent. He therefore contends the trial court improperly excluded his testimony that Sheely "explained she got in a fight." However, as Williams concedes, several Ohio appellate districts have held that a victim is not a party-opponent under Evid.R. 801(D)(2). See *State v. Ingram*, 12th Dist. No. CA2006-01-012, 2006-Ohio-4559 at ¶8; *State v. McMannis*, 10th Dist. No. 01AP-413, 2001-Ohio-4279, at ¶58; *State v. Dinwiddie* (Sept. 16, 1987), 9th Dist. No. 12876 at *2. The reasoning behind these holdings is that "Section 20, Article IV of the Ohio Constitution provides that 'all prosecutions shall be carried on, in the name, and by the authority, of the State of Ohio.'" See id. Since the State is a party to the criminal action and never the victim, a victim

cannot be a party-opponent according to the above holdings.

{¶31} Williams urges this court to diverge from the holdings of our sister districts and instead hold that a victim is a party-opponent for purposes of Evid.R. 801(D)(2). He notes that other types of actions, such writs of prohibition, procedendo, and mandamus are brought in the name of the State of Ohio, and claims that admissions of party-opponents are logically admissible in those cases. As an example, he cites *State ex rel. SCB, Inc. v. Sheesley,* 12th Dist. No. 07AP-400, 2008-Ohio-798, a mandamus action. In *Sheesley*, the court alluded in dicta that a statement by a workers' compensation claimant to an undercover investigator regarding a pre-existing, undisclosed injury could be considered an admission of a party-opponent pursuant to Evid.R. 801(D)(2). Id. at ¶42-46.

{¶32} We conclude, however, that *Sheesley*, along with other writs brought "in the name of the State" are distinguishable because those cases still involve two distinct parties aside from the State, for example, a relator and a respondent. A victim in a criminal case is not akin to a relator or respondent in a mandamus action. Rather, a victim is simply a witness for the State. It is not the victim's interests that are being represented in a criminal case, but rather those of the people of the State of Ohio. Therefore, we hold that a victim in a criminal case is not a party-opponent for purposes of Evid.R. 801(D)(2). Based on that, the trial court properly excluded Williams' statement about what Sheely told him about the source of her bruises, as it was inadmissible hearsay. Accordingly, Williams' second assignment of error is also meritless.

### Cumulative Error

{¶33} In his third and final assignment of error, Williams asserts:

{¶34} "Multiple instances of error, combined, caused reversible error in Mr. Williams' case."

{¶35} Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the errors does not individually constitute cause for reversal. *State v. Garner* (1995), 74 Ohio St.3d 49, 64, 656 N.E.2d 623. However, the doctrine of

cumulative error is inapplicable when the alleged errors are found to be harmless or nonexistent. Id.; *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, at ¶48.

**{¶36}** Based on the above analysis which concludes that Williams' other two assignments of error are meritless, the cumulative error doctrine does not apply. Accordingly, Williams' third assignment of error is meritless.

### Conclusion

**{¶37}** All of Williams' assignments of error are meritless. The trial court did not abuse its discretion by limiting the cross-examination of the victim, because the question asked about a past incident not relevant to the issues in this case. Further, the trial court properly prohibited Williams from testifying about an out-of-court statement the victim allegedly made to him, as that statement was hearsay, not an admission of a party-opponent. Finally, there is no cumulative error. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Waite, J., concurs.