[Cite as *State v. Shaw*, 2014-Ohio-5633.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 13 MA 137 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MELVIN SHAW | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of
Common Pleas of Mahoning County,
Ohio
Case No. 10 CR 754

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellee: Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant: Atty. J. Gerald Ingram
Atty. Desirae DiPiero
7330 Market St.
Youngstown, Ohio 44512

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: December 19, 2014

WAITE, J.

{¶1} Appellant Melvin Shaw appeals the dismissal of his petition for postconviction relief filed in the Mahoning County Court of Common Pleas. The petition was dismissed without a hearing. Appellant was convicted of shooting and killing Tracee Banks and shooting Jamel Turner on June 19, 2010, in Youngstown. He was sentenced to 62 years to life in prison. Appellant previously filed a direct appeal and the convictions were upheld, but the case was remanded for resentencing so that two felonious assault charges could be merged with an attempted murder charge as part of sentencing. *State v. Shaw*, 7th Dist. No. 12 MA 95, 2013-Ohio-5292, *appeal not allowed*, 138 Ohio St.3d 1436, 2014-Ohio-889, 4 N.E.3d 1052.

{¶2} Appellant argues that the petition for postconviction relief should not have been dismissed without first holding a hearing. Appellant acknowledges that not every petition requires a hearing, but he believes he presented enough evidence to warrant a hearing on the matter. Appellant's postconviction petition is based on allegations of ineffective assistance of counsel, and he sets forth four claims of ineffective assistance in his petition. Appellant argued that counsel was ineffective because he failed to present evidence from two alibi witnesses. The affidavits of the two supposed alibi witnesses (Appellant's mother and aunt) do not actually provide an alibi for the time of the shooting, and the fact that the affidavits are from close relatives reduces their credibility. Therefore, no hearing was required on this claim. Appellant also contends that counsel was ineffective for not allowing him to testify at

trial about his alibi, but in his affidavit in support of the petition he does not state the nature of his alibi, and there is no evidence supporting any alibi.

{¶3} Appellant argued that his counsel was also ineffective because he should have stipulated to the admission of Tracee Banks' cell phone records to impeach the testimony of Youngstown Detective John Patton. Patton stated that he saw cell phone messages on Banks' phone sent from Appellant and received just before her death, but the cell phone records were not admitted as evidence at trial. It is clear that the physical records were redundant and unnecessary as impeachment evidence because Patton testified that the messages he saw on the phone could not be confirmed by the cell phone records. Once again, no hearing was needed on this claim. In addition, we ruled in the direct appeal that the failure to stipulate to the cell phone records did not constitute ineffective assistance. *Id.* at ¶64.

{¶4} Finally, Appellant argued that counsel was ineffective for failing to challenge the pretrial photographic identification procedure used by the Youngstown Police. Jamel Turner identified Appellant in a police photo array, but it took more than one viewing of the array, and Appellant believes the procedure used was unduly suggestive. Appellant has not cited any evidence *de hors* the record that establishes this argument, and the matter is now *res judicata*, as it was also argued and overruled in Appellant's direct appeal. *Id.* at ¶57.

{¶5} Because there is no substantive evidence supporting the allegations in the petition, it was within the trial court's discretion to dismiss the petition without a

hearing. Appellant's arguments are without merit, and the judgment of the trial court is affirmed.

History of the Case

**{¶6}** Shortly after midnight in the morning of June 19, 2010, Appellant fired multiple shots into the residence located at 63 Manchester Avenue, Youngstown, Ohio. Tracee Banks and Jamel Turner were inside, and each was shot multiple times. Tracee died as a result of the wounds. Turner was severely injured but survived. Appellant was charged with the aggravated murder of Tracee Banks and the attempted murder of Jamel Turner. Appellant was also charged with two counts of felonious assault and one count of improper discharge of a firearm into a habitation. There were firearm specifications attached to each offense.

**{¶7}** Banks was 17 years old at the time of her murder. Appellant was her boyfriend, although their relationship was volatile. Banks and Turner were also friends. About 6:00 p.m. on June 18, 2010, Appellant dropped Banks off at the home of Sierra Smith at 63 Manchester Avenue. Banks was at the house to babysit Smith's daughter. Smith went to work around 6:45 p.m. Sometime later that evening, Turner visited Banks at the Manchester Avenue address. Turner testified that Banks received two phone calls and a text message from Appellant that evening. At one point, Banks said "I think Melvin is here." *Shaw, supra*, at ¶7. Turner looked out the window and saw Appellant. Shortly after that, Appellant fired multiple shots into the house. Turner was hit in the throat and leg. When Banks ran in front of him,

she was shot multiple times. Although severely injured, Turner was able to call 911 and reported the shooting to the police. Turner made the call at 12:45 a.m.

{¶8} At trial, Turner identified Appellant as the perpetrator of the crime. Turner had previously identified Appellant in a photographic lineup. Defense counsel had tried to suppress that photo identification, but the motion to suppress was denied.

{¶9} Detective John Patton from the Youngstown Police Department investigated the shooting. He testified that upon arriving at the scene he saw Turner on the floor, going in and out of consciousness. He also saw Banks lying on the floor, with her cell phone nearby. He saw two text messages from Appellant on the cell phone, one of which stated "I hate you." *Id.* at ¶9. He testified that the phone messages were erased after the phone was turned off and then turned on again. Patton was able to get the cell phone records for Banks' phone, however, the records did not contain the actual text of the messages.

{¶10} Appellant was brought in for questioning in the early morning hours of June 19, 2010. The video of the questioning was played for the jury. During that interview, Appellant denied all involvement with the shooting. When questioned about the texts, Appellant admitted he sent the text message asking Tracee if they were still "going together." *Id.* at ¶11. However, he denied sending a message stating "I hate you."

{¶11} A gunshot residue test was also performed on Appellant at that time. The result of the gunshot residue test was that the particles found on Appellant were

highly indicative of gunshot primer residue. Appellant stated during the questioning session that he had not used a gun recently. Appellant's statement and the gunshot residue test results were admitted at trial. Appellant did not testify in his defense.

{¶12} Appellant was found guilty of all offenses and accompanying gun specifications. He was sentenced to life in prison with parole after thirty years for aggravated murder, with three years for the accompanying firearm specification. Those sentences were ordered to be served consecutive to each other. He received a ten-year sentence for the attempted murder of Turner, and three years for the accompanying firearm specification. On count three, the felonious assault of Turner, he was sentenced to eight years in prison with an additional three years for the firearm specification. These sentences were to be served consecutively, except that the three gun specifications were merged. On count four, felonious assault of Turner, he received an eight-year sentence, which was ordered to be served concurrently with count three. The accompanying firearm specification merged with the firearm specification in count three. On count five, improper discharge of a firearm into a habitation, Appellant was sentenced to an eight-year sentence to run consecutive to the sentences imposed on counts one, two, three and four. The trial court issued a three-year sentence on the accompanying firearm specification but merged it with the firearm specification in counts one, two, three, and four. The total sentence was 62 years to life. The judgment entry is dated May 23, 2012. Appellant filed a direct appeal of his conviction and sentence raising six assignments of error, including an argument that counsel was ineffective for failing to stipulate to the admissibility of the

victim's cell phone records.　　　On February 12, 2013, Appellant filed a *pro se* petition for postconviction relief, arguing ineffective assistance of counsel.　The court denied the petition without a hearing on August 1, 2013.　This second appeal followed, and Appellant raises one assignment of error containing four arguments all dealing with ineffective assistance of counsel.

**{¶13}** On October 31, 2013, we affirmed the convictions but remanded the case for resentencing to merge the two felonious assault charges with attempted murder.　Appellant has not yet been resentenced.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT A HEARING.

**{¶14}** The four issues under this assignment of error all deal with Appellant's assertion that he should have been granted a hearing on his petition for postconviction relief due to ineffective assistance of counsel.　R.C. 2953.21 through 2953.23 sets forth the means by which a convicted defendant may seek postconviction relief, which is one of a number of methods used to collaterally attack a criminal conviction.　The statute affords relief from judgment where the petitioner's rights were denied to such an extent the conviction is rendered void or voidable under the Ohio or United States Constitutions.　R.C. 2953.21(A); *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph four of the syllabus.

**{¶15}** The trial court may dismiss a petition for postconviction relief without a hearing, "where the petition, the supporting affidavits, the documentary evidence, the

files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999), paragraph two of the syllabus; R.C. 2953.21(C), (E). The trial judge may weigh the credibility of the affidavits in support of the petition. *Id.* at paragraph one of the syllabus. In assessing credibility, the judge should consider: (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. *Id.* at 285. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witnesses, or to be internally inconsistent, thereby weakening the credibility of that testimony. *Id.* Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. *Id.*

{¶16} A postconviction petition may also be dismissed without a hearing where the claims are barred by *res judicata*. The doctrine of *res judicata* precludes a hearing where the claim raised in the petition was raised or could have been raised at trial or on direct appeal. *Perry, supra*, at paragraph nine of the syllabus. To overcome *res judicata*, a petitioner must present cogent, material evidence found outside of, or *dehors*, the record that was part of the direct appeal. *State v. Cole*, 2

Ohio St.3d 112, 443 N.E.2d 169 (1982). "Evidence outside the record by itself, however, will not guarantee a right to an evidentiary hearing. To overcome the *res judicata* bar, the evidence must show that the petitioner could not have appealed the constitutional claim based on the information in the original trial record." *State v. Combs*, 100 Ohio App.3d 90, 97, 652 N.E.2d 205 (1994).

{¶17} "Absent a showing of an abuse of discretion, a reviewing court will not overrule a trial court's findings on a petition for postconviction relief that are supported by competent and credible evidence." *State v. Davis*, 133 Ohio App.3d 511, 515, 728 N.E.2d 1111 (1999); *State v. West*, 7th Dist. No. 07 JE 26, 2009-Ohio-3347. An " 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶18} The basis of Appellant's petition for postconviction relief is ineffective assistance of counsel. This argument is normally barred in postconviction relief proceedings unless it is based on evidence *dehors* the record: "Where defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for postconviction relief." *Cole, supra*, at syllabus. Appellant was represented by new counsel in his direct appeal, and any claims of ineffective assistance of counsel that could have been made in the direct appeal are barred in postconviction relief proceedings. *Cole* at 113-114.

{¶19} In order to demonstrate ineffective assistance of counsel, a defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. The petitioner has the burden of proving ineffectiveness of counsel because a properly licensed attorney is presumed competent. *Calhoun*, 86 Ohio St.3d at 289, 714 N.E.2d 905.

{¶20} Appellant first argues that counsel was ineffective for failing to present evidence from two alleged alibi witnesses who supposedly could testify as to Appellant's whereabouts on the night of the crime. These two witnesses were Krishawn Shaw, Appellant's aunt, and Lisa Robinson, Appellant's mother. Given the close family relationship between the affiants and Appellant, the trial court could immediately discount the credibility of the affidavits. More importantly, Shaw had no immediate knowledge of Appellant's whereabouts after 11:30 p.m. on June 18, 2010. These crimes took place just before 12:45 a.m. on June 19, 2010. Therefore, Shaw is not a true alibi witness and could not affect the outcome of the trial. Likewise, Robinson's affidavit makes no mention of Appellant's whereabouts at the time of the crimes and only vaguely states that he was in Robinson's home sometime in the

early morning hours of June 19, 2010. Since neither affidavit presents a valid alibi, and given the likelihood that such evidence presented by close family members would be immediately discounted by the jury, counsel could not have been ineffective for failing to present this evidence at trial.

**{¶21}** Appellant's second argument is that counsel was ineffective because he did not call Appellant to testify at trial about his alibi. Appellant's alibi appears to be that he was with his mother and his aunt at the time of the crime, but we have already noted that he did not present any credible evidence to support this claim. If he had some other type of alibi to present in support of his petition, he failed to include it as part of the petition. As there is no credible evidence to support an alibi, counsel could not have been ineffective for failing to call Appellant to testify about an alibi.

**{¶22}** Appellant's third argument is that counsel should have stipulated to the authenticity of the victim's cell phone records at trial. Appellant believes that these records could have contradicted, or at least would have failed to corroborate, the testimony of Detective Patton regarding what he believed he saw on the victim's cell phone. This argument is barred by *res judicata*. We have already held in the direct appeal that: "We find that the act of failing to stipulate to the admissibility of the phone records does not amount to deficient performance or prejudice. As the state points out, the fact that the records did not match Detective Patton's testimony was brought to light during the trial and was presented to the jury. Therefore, the discrepancy was available for the jury to consider. Furthermore, it may have been

trial strategy to not have the records of Tracee's cell phone admitted at trial. Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance." *Shaw, supra*, 7th Dist. No. 12 MA 95, 2013-Ohio-5292, at ¶64. In other words, whether or not counsel stipulated to the phone records, there was no ineffective assistance of counsel because the discrepancies between Patton's testimony and the alleged records was already made clear to the jury.

{¶23} The fact that Appellant may have those records now, during postconviction proceedings, does not make them relevant or material. It also does not undermine our prior conclusion that counsel may have had tactical reasons to keep those records out of the trial. The records do show that Appellant initiated dozens of calls and text messages to the victim's phone in the 24 hours leading up to her murder, some of which took place just a few minutes before the crime happened. Appellant made no further attempts to call or send text messages to the victim just about the time the crime occurred. One possible inference is certainly that Appellant stopped calling the victim's number at that time because he knew the victim was dead, because he caused her death. This is just one inference that counsel would likely want to avoid being made at trial, and thus, it provides ample explanation for the trial strategy of keeping the phone records from being admitted as evidence.

{¶24} Appellant's fourth argument is that counsel was ineffective for failing to argue that the pretrial photographic identification procedure used by the victim Jamel Turner to identify Appellant was unduly suggestive. The police presented a photographic lineup to Turner while he was still in the hospital recovering from his

gunshot wounds. At first he did not recognize Appellant's photo in the array. A few days later Turner was asked to make an identification again, this time using better photographs. Turner did not identify Appellant, and the officer asked if he wanted to try again. Turner (who could not talk at this time due to his injuries) nodded affirmatively and then identified Appellant. After the viewing, Turner wrote that the photo could be Appellant, but that he did not have long hair anymore. Appellant contends that comments made by the officer during the presentation of the second photo array were impermissibly suggestive because the officer asked Turner if he wanted to look at the photos again.

**{¶25}** Appellant presents no evidence *dehors* the record to show why this alleged error rises to a constitutional violation. He relies solely on the trial record that was available during the original appeal. Appellant acknowledges that counsel did object to the photo lineup and that the motion to suppress the photo array was denied. Appellant challenged the denial of this motion to suppress in the direct appeal, and we rejected the argument: "Therefore, when considering all the facts and circumstances, including the number of times that Turner viewed the photos, we cannot find that the identification procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Shaw* at ¶57. Appellant is simply rearguing the assignment of error made on direct appeal, albeit with a slightly more nuanced argument. Without evidence *dehors* the record, it is apparent that Appellant is simply making an argument that could have been made on direct appeal and was not, and therefore, the alleged error is *res judicata*.

## Conclusion

{¶26} As there is no basis for any of Appellant's allegations of ineffective assistance of counsel, the trial court properly denied the petition for postconviction relief without a hearing. Appellant's assignment of error on appeal is overruled, and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.