# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ROBERT BOYD,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 MA 0012**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2017 CR 01381

**BEFORE:**
Carol Ann Robb, David A. D'Apolito, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Ralph M. Rivera,* Chief*,* Criminal Division, Office of the Mahoning County Prosecutor, *Atty. Gina DeGenova,* Mahoning County Prosecutor for Plaintiff-Appellee and

*Robert Boyd*, pro se.

Dated: December 18, 2023

**Robb, J.**

{¶1} Defendant-Appellant Robert Boyd appeals the decision of the Mahoning County Common Pleas Court dismissing his petition for post-conviction relief without an evidentiary hearing. In eleven assignments of error, Appellant sets forth various claims on which he believes the trial court should have conducted an evidentiary hearing. His twelfth assignment of error argues the court should have granted access to grand jury transcripts and funds for a private investigator. For the following reasons, the trial court's judgment denying post-conviction relief is affirmed.

STATEMENT OF THE CASE

{¶2} After a jury trial, Appellant was convicted of multiple offenses, including two counts of rape for purposely compelling two victims to submit to sexual conduct by force or threat of force. Count one was based on the testimony regarding anal rape provided by victim A, who was 17 years old at the time of the March 31, 2017 incident. Count two was based on the testimony regarding anal rape provided by victim B, who was 14 years old at the time of the April 17, 2016 incident. The gross sexual imposition conviction in count three also related to victim B. Appellant was additionally convicted of nine fifth-degree felony counts of the illegal use of a minor in nudity-oriented material due to photographs on a hard drive recovered during the execution of search warrants and two misdemeanor counts of disseminating matter harmful to juveniles for texting photographs of his penis to victim C, who was 16 years old.

{¶3} The trial court sentenced Appellant to maximum consecutive sentences for the rapes and the gross sexual imposition and to a combination of concurrent and consecutive sentences for the other offenses, for a total sentence of 24.5 years. (12/2/20 J.E.). This court affirmed his convictions. *State v. Boyd*, 2022-Ohio-3523, 198 N.E.3d 514 (7th Dist.), *reconsideration denied*, 7th Dist. Mahoning No. 20 MA 0131, 2022-Ohio-4749, *reopening denied*, 7th Dist. Mahoning No. 20 MA 0131, 2023-Ohio-271.

{¶4} On January 14, 2022, Appellant filed a timely pro se post-conviction relief petition, which he amended on April 25, 2022 (as permitted by the trial court). (10/28/22 J.E.). The state responded and filed a motion for summary judgment.

{¶5}   On December 22, 2022, the trial court dismissed the petition without an evidentiary hearing, making various findings and conclusions as to each ground raised in the petition.  The within timely appeal followed.[1]

POST-CONVICTION RELIEF LAW

{¶6}   As Appellant recognizes, we review the decision to dismiss the petition without a hearing under an abuse of discretion standard of review.  *State v. Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, 220 N.E.3d 773, ¶ 25; *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 51-52, citing *State v. Calhoun*, 86 Ohio St.3d 279, 286, 714 N.E.2d 905 (1999).  An abuse of discretion occurs if the trial court's attitude was unreasonable, arbitrary or unconscionable.  *Gondor*, 112 Ohio St.3d 377 at ¶ 60.

{¶7}   A petition for post-conviction relief may be filed by a convicted criminal defendant who claims "there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * *."  R.C. 2953.21(A)(1)(a)(i).  The petition shall state the grounds for relief relied upon and may ask the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.  *Id.*

{¶8}   The prosecutor can move for summary judgment.  R.C. 2953.21(E). Regardless, "a criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to a hearing."  *Calhoun*, 86 Ohio St.3d at 282.  Before granting a hearing on the petition for post-conviction relief, "the court shall determine whether there are substantive grounds for relief."  R.C. 2953.21(D).  *See also* R.C. 2953.21(F) (proceed to a prompt hearing on the issues unless the petition and the files and records of the case show the petitioner is not entitled to relief).  In addition to the petition with its supporting affidavits and documentary evidence, the court shall consider all files and records pertaining to the case.  R.C. 2953.21(D).

---

[1] A post-conviction petition is a collateral civil attack on a judgment, which is subject to the Appellate Rule applicable to civil actions, whereby the notice of appeal date is triggered by the date of service and notation of service on the docket.  *See* App.R. 4(A)(3), citing Civ.R. 58(B); *State v. Struckman*, 1st Dist. Hamilton No. C-200069, 2021-Ohio-1043, ¶ 7 (the time for appealing the denial of post-conviction relief is tolled and begins to run under App.R. 4(A)(3) only after notation of service on the docket by the clerk while the denial of a new trial motion in the same judgment was a criminal matter and not similarly tolled); *State v. Mitchell*, 11th Dist. Portage No. 2017-P-0007, 2017-Ohio-8440, ¶ 17-18 (although the parts of a judgment relating to criminal matters were not subject to Civ.R. 58 tolling, the post-conviction part of judgment was civil and appellate time began when the clerk docketed service).

**{¶9}** In general, "a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Calhoun*, 86 Ohio St.3d at 286 at paragraph two of syllabus. Before a hearing is scheduled, the petitioner must meet his burden of submitting evidentiary documents with sufficient operative facts to show the raised errors resulted in prejudice. *Id.* at 283, 289. Notably, "if the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential." *Id.* at 284.[2]

**{¶10}** An ineffective assistance of counsel claim involves both deficient performance and prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 694,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In general, the deficiency in performance must be a serious error falling outside the wide range of reasonable assistance so that the attorney no longer functioned as constitutionally guaranteed counsel. *Id.* Prejudice means a reasonable probability the result would have been different. *Id.* at 693-694 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."). If the facts related to deficient performance are lacking, then there is no need to review for prejudice and vice versa. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

**{¶11}** Specifically, before a hearing on a petition alleging ineffective assistance of trial counsel, "the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." *Calhoun*, 86 Ohio St.3d at 286. As Appellant emphasizes, the Ohio Supreme Court recently remanded a case to the trial court upon holding a hearing is required where the defendant proffered evidence outside the record that if true, would show counsel was ineffective, unless the record on

---

[2] The Court also observed the affidavits attached to a petition need not be accepted as true at a "paper hearing" where the court "may in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." *Calhoun*, 86 Ohio St.3d at 283-287 (with factors for assessing credibility without an evidentiary hearing). *See also Gondo*r, 112 Ohio St.3d 377 at ¶ 51-52 (discussing "the trial court's gatekeeping function" before a hearing).

its face disproved the petitioner's claim. *Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723 at ¶ 24, 27. This case is reviewed further below where raised.

**{¶12}** Pursuant to the doctrine of res judicata, the petitioner cannot raise issues that were raised or could have been raised at trial or in the direct appeal. *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996), syllabus; *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), paragraph four of the syllabus. The direct appeal from a criminal conviction is limited to the trial court record, and thus, prejudicial errors appearing in the record should be raised in the direct appeal rather than in a post-conviction petition. *See State v. Cole*, 2 Ohio St.3d 112, 114, 443 N.E.2d 169 (1982) (a post-conviction relief petition must avoid the res judicata bar by asserting claims based on evidence de hors the record). A post-conviction petition is properly dismissed without a hearing where the claims are barred by res judicata. *State v. West*, 7th Dist. Jefferson No. 07 JE 26, 2009-Ohio- 3347, ¶ 24-25, 34.

**{¶13}** Appellant sets forth twelve assignments of error. The first eleven assignments set forth claims he believes warrant an evidentiary hearing. We note although his petition enumerated 36 claims for relief, Appellant's brief does not cite the claim in the petition corresponding to each assignment of error. *See* App.R. 16(A)(7),(D). His twelfth assignment of error argues the court should have granted access to grand jury transcripts and funds for a private investigator.

ASSIGNMENT OF ERROR ONE

**{¶14}** Appellant's first assignment of error contends:

"[T]he trial court err[ed] in denying an evidentiary hearing where Boyd showed that failure to use a bi-polar expert was ineffective assistance of counsel."

**{¶15}** Victim A was 17 years old at the time of the rape in count 1. At the trial four years later, the victim testified to meeting Appellant online, conversing with him for a time, and then deciding to meet in person because he was curious about experiencing a sexual encounter with a man (noting he had a girlfriend). (Tr. 317-318). He said he initially consented to try anal sex but within seconds asked Appellant to stop because it hurt so much. (Tr. 326-328, 344, 360). Appellant refused to stop until he ejaculated inside the victim at least five minutes later. (Tr. 328-329).

{¶16} On cross-examination, victim A said he became an alcoholic after the incident. He noted he was released from rehabilitation treatment three months before trial and after treatment, "I forgot – I don't remember the past few years of my life too much. * * * Unless I think very hard on them." He then said he thought hard on the episode at issue before testifying. (Tr. 336, 357). The trial testimony of the nurse practitioner who treated victim A at the Child Advocacy Center noted victim A had a past medical history of bipolar disorder and did not take medication. (Tr. 377).

{¶17} Focusing on the victim's testimony about his memory and the nurse practitioner's testimony on unmedicated bipolar disorder, Appellant says his trial counsel should have attacked victim A's credibility by using an expert to present testimony that people with bipolar disorder engage in risky sexual behavior without recalling many aspects of their encounters. Appellant notes the trial court granted his former counsel's motion for funds to retain a named expert to assist in trial preparation. (11/8/18 J.E.). Asserting evidence outside the record, Appellant points to a pretrial letter from the expert attached as an exhibit to his petition.

{¶18} The expert opined that bipolar individuals who are experiencing mania could experience dramatic changes in their moral standards and engage in sexual activities they would never have engaged in during their normal state of mind. Appellant emphasizes the expert's additional comment: "I have encountered several patients who engaged in unusual sexual behaviors due to their mania and have little or no memory of this once their mania resolved due to the impairment of attention and memory that can occur while manic."

{¶19} Notably, the letter was attached to the motion for funds to retain the expert and was therefore part of the record on appeal. The state points to general ineffective assistance of counsel law stating where the defense knew what a certain expert had to say, the decision to refrain from calling him as a witness is "virtually unchallengeable." *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 182. Appellant claims the reasonableness of the strategy was a question for a hearing, theorizing there was no indication his replacement trial attorney read the letter submitted to the court by his former defense attorney. He says his case is similar to *Bunch* where the Supreme Court found sufficient operative facts warranting a hearing on deficiency and prejudice.

{¶20} In *Bunch*, the Supreme Court decided the petition "need not definitively establish" deficiency and prejudice but must be "sufficient on its face to raise an issue whether [the petitioner] was deprived of the effective assistance of counsel" (and must be dependent on factual allegations outside of the trial record). *State v. Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, 220 N.E.3d 773, ¶ 27. Stating the burden for obtaining a hearing is not the same as the burden of showing ineffective assistance of counsel in a direct appeal, the Court explained the trial court should not presume trial counsel's decision regarding expert testimony was strategic or require a petitioner to definitively prove the outcome would have been different but for deficient performance before denying a hearing on a petition. *Id.* at ¶ 28-29, 36.

{¶21} Contrary to Appellant's suggestion, this does not mean instances of trial strategy reflected on the record can never be the basis for denying a petition for post-conviction relief without a hearing. The argument in *Bunch* was that "trial counsel had been ineffective for failing to procure an eyewitness-identification expert to analyze Bunch's case and testify at trial" even though his prior attorney obtained permission from the court to hire an expert. *Id.* at ¶ 14. The Court noted the attorney was disciplined for neglecting a criminal matter shortly after the trial and was later indefinitely suspended from the legal practice for neglecting cases. *Id.* An expert affidavit was attached to the petition stating it was well known in the eyewitness identification field that an identification after an initial failed attempt tends to be unreliable and often involves unconscious transference. *Id.* at ¶ 44 (where the rape victim did not identify the defendant in the photographic lineup but identified him later when viewing an article on his arrest for the crime). The expert also opined the victim's identification was not likely to be accurate. *Id.* at ¶ 15.

{¶22} The Court pointed out the case did not involve a situation where counsel could have cross-examined a witness on the topic. *Id.* at ¶ 34. It was opined the failure to engage an expert can constitute deficient performance when the core of the case relates to evidence the jury cannot understand or be provided without an expert. *Bunch*, 171 Ohio St.3d 775, 2022-Ohio-4723, ¶ 40, citing *Hinton v. Alabama*, 571 U.S. 263, 272,

273, 188 L.Ed.2d 1, 134 S.Ct. 1081 (2014) and *State v. Herring*, 142 Ohio St.3d 165, 2014-Ohio-5228, 28 N.E.3d 1217.[3]

{¶23} On the deficiency prong, the *Bunch* Court concluded the record did not disprove the petitioner's claim that counsel's actions were unreasonable: "[t]he only information that appears on the face of the record regarding counsel's decision-making process is that counsel failed to use an expert witness even though prior counsel's request for funds to pay for an expert had been granted." *Id.* at ¶ 48. The Supreme Court's next inquiry was whether "the expert-witness testimony proffered in Bunch's petition, if true, would establish that M.K.'s identification of Bunch was likely inaccurate." *Id.* at ¶ 49 (noting the victim's identification was the core of the case).

{¶24} Although Appellant's former counsel also successfully moved for funds to pay for an expert, the case at bar has distinguishable features. The record here shows former counsel consulted an expert, received the letter now relied upon, and attached the letter to the motion for funds. The evidence relied upon in Appellant's petition (the letter attached to a motion for funds for an expert) was thus *in the record*, and the matter could have been raised on direct appeal. Nothing new was offered outside of the record. Furthermore, unlike in *Bunch*, the petition did not contain an affidavit provided by an expert; the unsworn letter does not rise to the level of an affidavit.

{¶25} Moreover, even assuming a topic related to sex memories of promiscuous manic individuals could have been admitted (under the rape shield statute and applicable evidentiary rules), there was no indication victim A was in a manic phase of his bipolar disorder at the time he met with Appellant. Additionally, the expert's letter appeared to be providing mere anecdotal examples of sexual memory failures claimed by some of his patients after a manic phase. Encountering several patients who claim they do not remember an unusual sexual experience during a manic phase is not akin to Appellant's interpretation that this occurs to bipolar people in general (as compared to the expert's statement about risky sexual behavior during a manic phase, unrelated to memory). The

---

[3] *Hinton* and *Herring* were capital cases on review after the evidentiary hearing on the post-conviction petition. The petition in *Herring* was supported by expert affidavits relevant to the specific individual being discussed (the defendant); in reviewing the case after the hearing, the Court concluded the evidence showed the defense failed to adequately investigate the defendant's background before his death penalty mitigation hearing. *Herring*, 142 Ohio St.3d 165.

state points out the letter was not shown to relate to victim A except to the extent that he had a bipolar diagnosis. In addition to the absence of evidence on this victim being in the midst of mania, there was no indication the victim lacked a memory of the core aspects of the sexual encounter. In fact, he acknowledged he intended to meet Appellant for a sexual encounter that night and initially consented to the anal sex.

**{¶26}** In sum: the cited evidence was in the trial record; the evidence attached to the petition, if true, would not show counsel was ineffective; and Appellant did not present sufficient operative facts showing a hearing was required to ascertain whether the failure to call a bipolar expert to testify on sexual memory failures constituted ineffective assistance of counsel. Accordingly, this assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

**{¶27}** Appellant's second assignment of error alleges:

"[T]he trial judge err[ed] in denying an evidentiary hearing where Boyd attached Facebook and Instagram messages showing [victim A's] testimony to be false and both the Defense counsel and Prosecutors failed to correct this false testimony."[4]

**{¶28}** Appellant says victim A testified falsely about their communications before the March 31, 2017 incident giving rise to the rape charge in count one. Appellant points to his conversations with this victim on Facebook and Instagram seized by law enforcement, which were attached to his petition and said to be evidence outside the record. He says portions of the victim's testimony are not supported by these messages. Specifically, Appellant's brief focuses on victim A's testimony about what time they met, how long they communicated before meeting in person, and whether Appellant sent a nude photograph.

**{¶29}** Although Appellant's brief fails to cite to the record, we reviewed the testimony on these topics. Regarding the time Appellant picked victim A up from his neighborhood, the victim testified it was around midnight. (Tr. 320, 339). In estimating how long they had been communicating before their sole encounter in person, the victim said, "Probably about two weeks." (Tr. 317). When the state asked if they communicated

---

[4] Appellant's second, third, and fourth assignments of error raise similar arguments of perjury, each as to a different witness. The arguments as related to counsel will be discussed under these assignments of error, while the additional argument on the duty of the prosecutor will be discussed under assignment of error nine on prosecutorial misconduct.

outside of Facebook, the victim answered, "The app called Snapchat." (Tr. 315). In responding to the prosecutor's question on whether Appellant sent nude photographs to him, victim A answered, "I think he might have sent a few." (Tr. 316).

{¶30} On cross-examination, defense counsel asked if they exchanged photographs on Snapchat, and the victim answered in the affirmative. (Tr. 337). Referring to his review of the evidence, defense counsel asked whether the photographs they exchanged were nudes or graphic. The victim said the photos he sent were not graphic, and they spoke of a photograph of the victim without a shirt. Defense counsel then asked, "But it wasn't sexual. It wasn't that you didn't have your pants on and there were no pictures that Boyd sent to you –" at which point the victim answered, "No, sir" prompting defense counsel to declare, "Fair enough." (Tr. 338).

{¶31} Generally, prior inconsistent statements are hearsay and admissible only for impeachment (if the latter standards are met). *See State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 128 (unless there is a hearsay exclusion or exception). First, Appellant argues the messages were not hearsay, because they were direct communications between the victim and himself. This is a misreading of the evidentiary rules. *See* Evid.R. 801(C) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement"). He relies on the state's introduction of messages he sent to another victim (as to a different charge). However, this attempted comparison fails to recognize the distinct rule providing a defendant's own communications are not hearsay when offered by the other party. *See* Evid.R. 801(D)(2). *See also State v. Williams*, 7th Dist. Mahoning No. 09 MA 11, 2010-Ohio-3279, ¶ 30 ("victim is not a party-opponent under Evid.R. 801(D)(2).").

{¶32} Next, Appellant suggests counsel should have used the messages as prior inconsistent statements for impeachment of the victim because they were "facts of consequence." *See* Evid.R. 613(B)(2)(a). He cites a non-binding case that was a direct appeal involving counsel's failure to utilize information in texts from a victim to the defendant wherein the victim admitted he was the aggressor. *City of Cleveland v. Holley*, 2020-Ohio-1275, 153 N.E.3d 685, ¶ 11 (8th Dist.). The potential admissibility path for the statements was not specified by the court. Presumably, questioning on a prior confession

of guilt could lead to the hearsay exception on a statement against interest and/or as impeachment evidence because whether the defendant was the aggressor was the core issue and was a fact of consequence other than credibility. To the contrary, if certain answers are not significant to either side's case, defense counsel can further examine the witness or choose to move on. *See State v. Clark*, 7th Dist. Mahoning No. 08 MA 15, 2015-Ohio-2584, ¶ 25.

{¶33} As the state indicates, Evid.R. 613(B)(2)(a) provides for the admission of a statement if the subject matter is "[a] fact that is of consequence to the determination of the action other than the credibility of a witness." In arguing his attorney should have used certain social media messages at trial to show prior inconsistent statements, Appellant's brief relies on facts related merely to credibility.

{¶34} Regardless, a message Appellant sent to the victim saying his GPS estimated he would arrive at 9:13 does not render the victim's estimation (that he was picked up close to midnight) perjury. Under the circumstances of this case, the precise time of the meeting was inconsequential. Likewise, the exact number of weeks of online communication before meeting in person was not material to this case, and the victim's estimate would not be considered perjury. Appellant's trial testimony suggested he added the victim on Facebook before the dates in the seized messages. (Tr. 647). A following of each other's Facebook pages may not be equated with active communication by a reasonable witness. Moreover, the cited messages begin a mere ten days before the victim's estimated communication start date and contain indicators reflecting it was the beginning of the personal, intimate conversation.

{¶35} Anticipating an argument that any nude photographs were absent from the seized Facebook or Instagram messages because they were sent through Snapchat, Appellant points to messages wherein he directed the victim to Snapchat and the victim responded his phone did not "have enough space." Yet, this does not mean the victim did not free up space and obtain Snapchat. Regardless, Appellant was not charged with sending a nude photograph to victim A, and defense counsel expressly voiced satisfaction with victim A's final answer recited above (which suggested he was mistaken in believing Appellant sent a totally nude photograph to him).

{¶36} In any case, as Appellant's petition recognized, the victim's statement about not having enough space for Snapchat was in the search warrant affidavits, which quoted various social media conversations between Appellant and victim A. In fact, we quoted many of them in the direct appeal in addressing Appellant's search warrant arguments. *Boyd*, 198 N.E.3d 514 at ¶ 31-33. We also pointed out the appellate record for the direct appeal includes pretrial filings and evidence presented at hearings. *Id.* at ¶ 116. Accordingly, the emphasized message is not outside the record. This assignment of error is overruled.

ASSIGNMENT OF ERROR THREE

{¶37} Appellant's third assignment of error argues:

"[T]he trial judge err[ed] in denying an evidentiary hearing where Boyd attached social media messages and police reports showing [victim B's] testimony to be false and both the Defense and Prosecutors failed to correct this false testimony?"

{¶38} Focusing on victim B, various arguments in this assignment of error track those set forth about victim A in the prior assignment of error, such as the argument on hearsay and whether a prior inconsistent statement was a fact of consequence to the determination of the action other than the credibility of a witness. *See* A/E 1 above. Appellant says counsel should have attacked victim B's credibility with evidence indicating he testified falsely on whether he returned to Appellant's house after the night giving rise to the rape and gross sexual imposition charges in counts two and three (April 16, 2016).

{¶39} Appellant's testimony at trial acknowledged he masturbated the fourteen-year-old on four different days, saying it was with consent and not through force or threat. He claimed the victim maintained contact with him and returned to his house 75 to 100 times between April 16, 2016 and May 2017, when the victim began his incremental disclosure of being sexually abused by Appellant. (Tr. 644-645, 700). When cross-examining victim B, defense counsel asked, "after the time that you went to the hospital, did you ever go back to his house?" The victim asked counsel to repeat the question. Counsel then rephrased the question by asking, "After that date when you got beat up by [the other juveniles], had you ever been back to the Boyd house?" Appellant began saying, "No." However, it seems he was interrupted because defense counsel then began stating "So" while victim B was saying, "You're trying to confuse my words." (Tr. 507).

The state urges this was not shown to be perjury and points out victim B was extremely agitated by the end of cross-examination.

**{¶40}** Claiming he was relying on evidence outside the record, Appellant points to police reports and social media messages involving victim B after the night in question. For instance, he claims victim B's return to his house is indicated by reports victim B committed burglary at Appellant's house in November 2016 and July 2017 (after Appellant's arrest). He also cites to a police report involving victim B reporting Appellant was about to have sex with a child in his car. The state urges facts such as these are not of consequence to the action and/or relate merely to credibility. The disclosure of these particular reports would have been more prejudicial to the defense than helpful.

**{¶41}** In any event, there was already evidence in the record on the topic Appellant wishes to demonstrate (that victim B returned to Appellant's house after the night of the incident). Finding an item outside the record to attach to a petition does not turn an issue into a substantive post-conviction claim where it is essentially cumulative to evidence that was in the record on a topic that could have been raised on direct appeal. *See, e.g.*, *State v. Blanton*, 171 Ohio St.3d 19, 2022-Ohio-3985, 215 N.E.3d 467, ¶ 31, 43 ("simply overcoming the res judicata bar through the introduction of evidence outside the record is not sufficient to entitle the petitioner to a hearing"), citing *Cole*, 2 Ohio St.3d at 114 (to obtain a hearing, the petitioner "must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial").

**{¶42}** For instance, Appellant emphasizes a police report investigating a noise complaint showing victim B was approached after reported gun shots but claimed he merely used fireworks and said he obtained them from Appellant's house. We note Appellant's address was not the location of the noise complaint. Furthermore, this information was contained in the search warrant affidavit, which was part of the record from the suppression hearing. We reviewed it in the direct appeal while addressing Appellant's search warrant arguments. *Boyd*, 198 N.E.3d 514 at ¶ 30 (noting the investigation of the noise complaint occurred in March 2017). Likewise, the search warrant affidavit referred to a report Appellant made to the police in the winter of 2017 about victim B using drugs with a juvenile who lived at Appellant's house. *Id.*

**{¶43}** Appellant also focuses on a police report saying he bought victim B a cigar in 2017, claiming this represents his evidence outside the record. However, the defense elicited the 2017 cigar-buying incident from the investigating officer on cross-examination. In addressing victim B's credibility in the direct appeal, we said: "The investigating officer acknowledged the victim stayed in communication with Appellant after the night of April 16, 2016 and was one of the minors Appellant was supplying with illegal products in 2017." *Id.* at ¶ 88.

**{¶44}** As for social media messages, Appellant says his petition contained evidence outside the record in the form of a message he received from victim B asking if Appellant could come get him and another juvenile. As analyzed in the prior assignment, this type of message would constitute hearsay. In addition, it was not a "fact of consequence to the determination of the action other than the credibility of a witness." *See* Evid.R. 613(B)(2)(a). In any case, this message was quoted (and interpreted) by law enforcement in the search warrant affidavit, and we quoted it in the direct appeal while addressing Appellant's arguments about the warrant. *Boyd*, 198 N.E.3d 514 at ¶ 30.

**{¶45}** In fact, Appellant's direct appeal claimed trial counsel failed to cross-examine victim B thoroughly about his continued contact with Appellant, and we discussed the evidence of continued contact, including the cited social media message and information from police reports recited in the search warrant affidavits. *Id.* at ¶ 114-121. As we explained, "the appellate record is not confined to the evidence introduced at trial; rather, the appellate court can view other parts of the trial court's record, including pre-trial filings and hearings." *Id.* at ¶ 116. We found it was a strategic decision to avoid further questioning of victim B, who was melting down on the stand. *Id.* at ¶ 120.

**{¶46}** We also found prejudice was lacking due to the information elicited from the officer, noting it was believable that a child would continue to communicate with a sexual abuser who supplied him with illegal products. *Id.* at ¶ 121 (referring to grooming and the location of his peer group). *See also Boyd reopening denied*, 7th Dist. Mahoning No. 20 MA 0131, 2023-Ohio-271 at ¶ 20 (appellate counsel was not ineffective for failing to raise prosecutor's duty on false testimony while noting the evidence on the record about victim B's return to the house or continued communications with Appellant). On cross-examination, the officer agreed the cigar investigation and various messages indicated

Appellant and victim B had subsequent contact and said he "wouldn't be surprised" if victim B returned to the house. (Tr. 599).

**{¶47}** Consequently, these arguments are barred by res judicata. *See Szefcyk*, 77 Ohio St.3d 93 at syllabus; *Cole*, 2 Ohio St.3d at 114; *Perry*, 10 Ohio St.2d 175 at paragraph four of the syllabus. Regardless, substantial grounds for relief were not presented. This assignment of error is overruled.

ASSIGNMENT OF ERROR FOUR

**{¶48}** Appellant's fourth assignment of error argues:

"[T]he trial judge err[ed] in denying an evidentiary hearing where Boyd attached social media messages and police reports showing Sergeant Hillman['s] testimony to be false and both the Defense counsel and Prosecutors failed to correct it."

**{¶49}** When defense counsel asked the officer if he was aware whether victim B returned to Appellant's house, the officer initially responded, "I'm not specifically aware, no." Counsel rephrased the question by asking, "in the course of your either investigation of this or any other event, do you know whether or not he was at Boyd's?" The officer responded, "I don't." (Tr. 599). Defense counsel then referred to the 2017 cigar-buying incident, and the officer agreed there was evidence suggesting they were in contact after the 2016 incident. The officer also said, "I wouldn't be surprised if [victim B] was at the house, but -" at which point defense counsel cut him off and said he was finished with the witness, as this was clearly the answer counsel was looking to elicit. (Tr. 599).

**{¶50}** Noting the specific language used in these questions and answers, the state says the officer was pointing out he did not personally know the fact asked. *State v. Iacona*, 93 Ohio St.3d 83, 97, 752 N.E.2d 937 (2001) (a statement is not considered false and the state is not required to correct the statement before the end of trial where a witness's statement was qualified one or "was, by its own terms, limited to his own personal knowledge"). "Confusing or inconsistent statements within a state witness's testimony do not equate with the state suborning perjury." *State v. Clark*, 7th Dist. Mahoning No. 08 MA 15, 2015-Ohio-2584, ¶ 25. And, counsel can cross-examine instead of objecting to the testimony. *Id.* Here, the officer changed course when it became clear defense counsel was not asking about personal knowledge but about hearsay provided to him in investigations.

**{¶51}** In claiming he has evidence outside the record to support this claim in his petition for post-conviction relief, Appellant reiterates the arguments made under the prior assignment of error about police reports and social media messages suggesting victim B returned to Appellant's house after April 16, 2016. He says this further demonstrates the investigating officer falsely testified that he had no reason to believe victim B returned to Appellant's house.

**{¶52}** As stated in the prior assignment of error, our decision in the direct appeal pointed to the social media message and the contents of certain police reports suggesting victim B's return to the house when we were addressing the search warrant claim, and we then used the officer's testimony on these matters when addressing Appellant's belief that victim B was not credible and should have been questioned further. *Boyd*, 198 N.E.3d 514 at ¶ 30, 88, 121. Appellant also accused the officer of presenting false testimony in his application for reopening where he argued appellate counsel was ineffective for failing to raise an argument about the officer's false testimony about whether victim B returned to Appellant's house. *Boyd reopening denied*, 7th Dist. Mahoning No. 20 MA 0131, 2023-Ohio-271 at ¶ 20. We found no genuine issue as to whether Appellant was deprived of effective appellate counsel by failing to raise this allegation, which we noted relied on evidence in the record. *Id.*

**{¶53}** We incorporate our discussion under the prior assignment of error, which pertains to the same underlying topic. The allegations Appellant used to support his claim were in the record submitted on appeal and previously cited by this court. We also point out the petition's attachment of an additional police report outside of the record as additional support for the same proposition does not turn a prior issue into a substantive post-conviction claim where the evidence is essentially cumulative to evidence that was in the record on a topic that could have been raised on direct appeal. *See, e.g., State v. Shaw*, 7th Dist. Mahoning No. 13 MA 137, 2014-Ohio-5633, ¶ 22-26 (no error in failing to grant hearing before denying petition containing additional evidence where the discrepancy was brought to light during the trial and was presented to the jury for consideration). Regardless, counsel continued questioning the officer and elicited a changed answer that satisfied counsel. This assignment of error is overruled.

Case No. 23 MA 0012

<u>ASSIGNMENT OF ERROR FIVE</u>

**{¶54}** Appellant's fifth assignment of error argues:

"[T]he trial judge err[ed] in denying an evidentiary hearing where Boyd provided medical records which questioned his ability to be guilty on counts 1, 2, and 3."

**{¶55}** In discussing sufficiency and weight of the evidence as to the rape of victim A, our decision in the direct appeal of his conviction recited: the anal sex began with consent; the victim repeatedly asked Appellant to stop because it hurt; Appellant refused to stop for at least five minutes (until he ejaculated); Appellant restrained the victim by pressing his arms on the victim's spread arms and hands (with the victim positioned facedown with his legs over the edge of the bed); and the victim said he was in a state of shock and did not try hard to get Appellant off. *Boyd,* 198 N.E.3d 514 at ¶ 54-60, 79-80, citing R.C. 2907.02(C) (the victim need not prove physical resistance) and R.C. 2901.01(A)(1) (defining force as any compulsion or constraint physically exerted by any means). The nurse practitioner testified victim A weighed 141 pounds. (Tr. 370).

**{¶56}** In discussing the weight of the evidence as to victim B, we recited: the victim was forced to spend the night at Appellant's house after two of the boys he was with beat him up and took his phone; he fell asleep in the living room and awoke to find Appellant on top of him so that he could not move his hands; Appellant shushed the victim while pressing a hand to the victim's mouth when he tried to yell; Appellant touched his penis while holding him down; Appellant put the victim's penis in his mouth while pressing his body down; the victim demonstrated how his hands were secured and explained Appellant used *his legs* to do so; Appellant turned him around and held his hands behind his back "like the police"; he could not move as all of Appellant's weight was on him; and Appellant subjected him to anal sex, which hurt and "felt like forever." *Id.* at ¶ 84-85. The investigating officer estimated the fourteen-year-old victim B weighed 100 pounds. (Tr. 419).

**{¶57}** Appellant attached to his post-conviction relief petition medical records from his three-day hospital stay in 2008. The records state Appellant broke both wrists after falling from a twelve-foot high deck and surgery was performed on his left wrist to insert metal hardware (due to a "minimally displaced" fracture). A notation memorializing informed consent before surgery says Appellant was advised of the "risks and benefits of

surgery" including decreased range of motion, arthritis, and need for future surgery. Appellant argues counsel should have ensured the jury knew about his inability to assault victim A or victim B in the manner they described due to his past wrist trauma, claiming the metal hardware inhibited weight-bearing activities.

**{¶58}** Firstly, we point out this contention contradicts Appellant's admission at trial as to victim B. Appellant agreed victim B was "tiny" and testified at trial, "Yes, he was a very little kid. He got picked on all the time. * * * If I wanted to overpower him, I probably could. * * * I mean, I'm -- I'm a grown adult." (Tr. 705).

**{¶59}** As to victim A, Appellant testified the victim initially got in a "doggy position" but he told him to "lay down" because "I can't fuck in that position. I have a broken arm and I just can't get the leverage to fuck." (Tr. 658). This final position was also described in the victim's testimony. Although Appellant testified about an issue with his arm, he explained it would have affected his performance in a *non-used position*. Appellant did not state he could not have placed his arms on the victim's arms and hands in the final position utilized.

**{¶60}** In any case, as the trial court pointed out, Appellant's claim about the status of his wrists in 2016 or 2017 was not supported by the medical records. Those records were generated while providing emergency treatment for injuries more than seven years before the rapes. And, there were no affidavits from physicians submitted here. Appellant failed to present sufficient operative facts to warrant a hearing on this topic. As substantive grounds for relief were not presented to trigger a hearing under R.C. 2953.21(D), this assignment of error is without merit.

ASSIGNMENT OF ERROR SIX

**{¶61}** Appellant's sixth assignment of error alleges:

"[T]he trial judge err[ed] in denying an evidentiary hearing on Boyd['s] argument that search warrants executed in Palo Alto California were signed outside of the jurisdiction of the Common Pleas Judge."

**{¶62}** A motion to suppress was litigated in the trial court where the Instagram warrant and the affidavit in support of the warrant were presented as exhibits. During the direct appeal of his criminal conviction, we reviewed the information in those documents

in overruling Appellant's suppression arguments on topics such as probable cause in the affidavits and the breadth of the warrants.  *Boyd,* 198 N.E.3d 514 at ¶ 7-23.

**{¶63}**  Appellant's post-conviction petition argues trial counsel should have raised a suppression argument regarding a common pleas judge in Mahoning County, Ohio issuing a search warrant for a county resident's communications where the electronic record of the communications was held by Instagram, a California company.[5]  His brief contends appellate counsel in his direct appeal was ineffective for not raising an issue with trial counsel's failure to raise this suppression argument.

**{¶64}**  Appellant's post-conviction relief petition failed to cite evidence in support of his claim besides the Instagram search warrant; he attached this warrant with the affidavit used to obtain the warrant and the return.  However, these items were part of the record in the direct appeal of his criminal conviction.  See *Boyd,* 198 N.E.3d 514 at ¶ 22, 116 ("the appellate record is not confined to the evidence introduced at trial; rather, the appellate court can view other parts of the trial court's record, including pre-trial filings and hearings").  The trial court thus reasonably ruled this claim did not warrant a hearing as Appellant failed to present evidence outside the record to show the claim could not have been raised in the direct appeal.  A post-conviction petition must be based on evidence outside of the record to avoid the bar of res judicata. *See Cole*, 2 Ohio St.3d at 114 at ¶ 24.

**{¶65}**  Appellant acknowledges the doctrine of res judicata bars a defendant's post-conviction petition from raising issues that were raised or could have been raised at trial or in the direct appeal.   *See Szefcyk*, 77 Ohio St.3d 93 at syllabus.  However, he reasons the issue could not have been raised on direct appeal because it was not raised at the trial court level.  This is not the law on res judicata and is based on Appellant's misreading of a quotation from an Ohio Supreme Court case.

**{¶66}**  In *Blanton*, the Court affirmed the denial of an evidentiary hearing on the petition while pointing out the appellate court incorrectly said the claim was actually raised

---

[5] After mentioning the location of the warrant's "execution" (using the term to mean the implementation of the warrant), the text of this assignment of error also mentions the location where the warrant was "signed" but there is no argument or evidence on the place of signing, which was also not mentioned in the petition. Rather, Appellant's argument appears wholly related to the place where the records may have been electronically stored.

in the direct appeal. *Blanton*, 171 Ohio St.3d 19 at ¶ 58. "The question is whether the claim could have been fully addressed in the direct appeal or whether its adjudication required evidence outside the trial record." *Id.* The law set forth in the case refutes Appellant's argument. The Court reiterated the principle that res judicata bars a claim that was raised *or could have been raised during trial* or on appeal of the conviction, unless it requires outside evidence or appellate counsel was also trial counsel. *Id.* at ¶ 30 (thus, new appellate counsel's failure to raise ineffective trial counsel is thereafter barred if the issue could fairly have been determined without resorting to evidence dehors the record).

{¶67} Since Appellant's petition does not point to evidence outside the record, the claim about the execution of a warrant for electronic records could have been raised on direct appeal, such as by adding this ground to the ineffective assistance of trial counsel argument made in that appeal.

{¶68} We also point out Appellant's argument relies on a case finding a constitutional violation warranted suppression of evidence where an Ohio municipal court issued a search warrant for a house and cars located in another state. *State v. Jacob*, 185 Ohio App.3d 408, 2009-Ohio-7048, 924 N.E.2d 410, ¶ 26 (2d Dist.), citing Crim.R. 41(A) ("A search warrant * * * may be issued by a judge of a court of record to search and seize property located within the court's territorial jurisdiction"). However, the case is non-binding and distinguishable. It was a direct appeal of a criminal conviction. And, the case did not involve the electronic communications of a resident of the county and state where the warrant was issued.

{¶69} Pursuant to the federal Stored Communications Act, a provider of electronic communication services or remote computing services can be compelled to disclose the contents of messages if a warrant was issued using state warrant procedures by a court of general criminal jurisdiction authorized to issue search warrants. 18 USC § 2703(a), (b)(1)(A). Additionally, under California law, a corporation located in California "that provides electronic communication services or remote computing services to the general public" must comply with "a warrant issued by another state to produce records * * * as if that warrant had been issued by a California court." Cal. Penal Code § 1524.2(c). In any case, this assignment of error is without merit.

## ASSIGNMENT OF ERROR SEVEN

{¶70} Appellant's seventh assignment of error argues:

"[T]he trial judge err[ed] in denying an evidentiary hearing on Boyd['s] argument that his Defense attorney should have requested a continuance after the prosecutor provided over 24,000 pages of discovery less than a week prior to trial."

{¶71} On this claim, Appellant attached to his petition the entry approving appointed trial counsel fees. The motion was submitted by defense counsel to the trial court before the sentencing entry was released, and the approval was filed by the trial court five days after sentencing. In addition to attorney fees, counsel sought reimbursement for expenses as evidenced in an attached receipt from a copy company. The receipt showed over 24,000 copies were made under the *Boyd* case on September 26, 2020. This was the Saturday before trial (with jury selection occurring on September 28, 2020, followed by a day without proceedings in the case, and trial beginning on September 30, 2020).

{¶72} Appellant's brief initially claims the state provided all of these pages just prior to trial without citing a date, a place in the record, or outside evidence for this allegation. We notice his petition claimed the state did not provide these pages until three days before they were printed. However, there was no indication all pages were provided at that time and no indication there was new or significant information in any supplemental discovery accompanied by a flash drive. (We note prior discovery releases were accompanied by discs.)

{¶73} Appellant's unsupported allegation (about 24,000 pages of late discovery) thus does not bolster his main and speculative argument that trial counsel did not have time to review the discovery and should have requested a continuance. Appellant believes his claim regarding counsel's insufficient time to review discovery is supported by his prior arguments on counsel's failure to present certain social media messages and police reports. We incorporate our discussion in assignments of error two through four (where we observed the topics were covered by defense counsel at trial and we pointed out various social media messages and police reports were already in the record from the suppression stages).

Case No. 23 MA 0012

{¶74} Furthermore, the copy receipt shows various subfiles in the case were provided to the copy company. As the state points out, printing a mass amount of pages on the weekend before trial does not indicate the pages were never viewed before. Attorneys regularly view evidence at the prosecutor's office in open file discovery and/or obtain discovery information packets in the form of electronic documents for perusing over the course of representation (during which counsel may take notes for later decision-making on whether hard copies of certain or all items will be needed at the trial). It is not unusual for counsel to decide just before trial whether to print all, some, or no discovery documents for use at trial. One reason for this is that plea agreements often occur at the last minute (in which case early printing of documents for use at trial would have been for naught). The use of a copy service after a decision was made to generate hard copies does not show counsel's failure to review the documents. And, there was no indication counsel lacked time after receiving a flash drive or printing documents to review any supplemental items.

{¶75} As the trial court concluded, there was no evidence suggesting trial counsel rendered ineffective assistance of counsel (deficiency plus prejudice) due to the lack of a request for a continuance after printing documents the weekend before trial. Without sufficient operative facts on the topic, an evidentiary hearing was not required, and this assignment of error is overruled.

ASSIGNMENT OF ERROR EIGHT

{¶76} Appellant's eighth assignment of error alleges:

"[T]he trial judge err[ed] in denying an evidentiary hearing on Boyd['s] argument that police were purposely misleading in their affidavits to search Boyd['s] homes and social media accounts."

{¶77} As Appellant acknowledges, in overruling his suppression arguments, we referred to the Instagram search warrant affidavit as containing information from a 15-year-old's father (whose report was the impetus for investigating Appellant after the father saw messages from another juvenile about buying illegal items from Appellant). *See Boyd,* 198 N.E.3d 514 at ¶ 12-22. The 15-year-old (who was not a victim in this case) told the police Appellant offered to perform oral sex on him and provided him with alcohol and tobacco products. *Id.* at ¶ 14.

**{¶78}** The search warrant affidavit quoted from a conversation between this child and another juvenile. In one message, this child complained to another juvenile about how Appellant repeatedly "snaps" to request "dick pics" and to offer oral sex. *Id.* at ¶ 18. The friend replied, "[Appellant] asked me for a threesome with my best friend and then he asked me for nudes and one time I asked him for a ride and he told me if I clean his house naked that he would help me * * * You know he literally had sex with this one guy at our school?" *Id.* at ¶ 19 (where we also noted the police confirmed the identity of this friend).

**{¶79}** Appellant now argues in seeking the search warrants, the attesting officer misled the court into assuming the friend and the "guy at our school" mentioned by the friend were under 16. Noting some high school students are over 16, Appellant claims the "guy at our school" (in the rumor) was 18 years old and the friend spreading the rumor was 17 years old. Appellant emphasizes the law allows him to have sex with juveniles who are 16 or older and thus the friend's claims about Appellant requesting a threesome or about Appellant having sex with a student were not pertinent to probable cause.

**{¶80}** Appellant complains the "misleading" statements were placed in the affidavit for the Instagram warrant and in the subsequent affidavit for the warrant related to houses and devices. He claims the statements became more objectionable when repeated for the subsequent warrant because the conversations the juveniles attributed to Appellant were not recovered during the execution of the first warrant on Appellant's Instagram account. However, this argument ignores the 15-year-old's reference to "snaps" (Snapchat) in the messages and the existence of in-person conversations. Plus, the social media warrant only looked back in time several weeks.

**{¶81}** We also note various legal aspects Appellant fails to consider. As Appellant learned from sending photographs of his penis to victim C (who was 16), just because minors who are 16 or 17 can consent to sex with an adult does not mean obscene photographs can be exchanged. He would not have been permitted to procure or possess illegal photographs of a minor. *See* R.C. 2907.321(A)(5). As footnoted in the direct appeal of the criminal conviction, the offense of compelling prostitution applies to all minors under 18 and has no compulsion element. *See Boyd,* 198 N.E.3d 514 at fn. 2; R.C. 2907.21(A)(2)(a) (knowingly induce, procure, encourage, solicit, request, or otherwise facilitate a minor to engage in sexual activity for hire, whether or not the

offender knows the age of the minor). The exchange of a sexual act for a product or service can be considered for hire. An attempt to commit this offense would also be a crime. *See* R.C. 2923.02(A).

**{¶82}** In any event, there are other issues with Appellant's argument on appeal. His petition argued he was entitled to post-conviction relief because trial counsel was ineffective for failing to raise the misleading nature of the affidavit while pointing out people in high school are often over 16. Yet, he failed to provide evidence of the ages of the fifteen-year-old's friend or the "guy at our school" briefly mentioned by the friend. In fact, Appellant's petition did not even mention the ages now attributed to these individuals on appeal. (Pet. at 35). As the trial court pointed out: there was nothing produced to support his claim; there was no attachment of evidence outside the trial record; and res judicata bars a claim that could have been brought earlier. As we previously pointed out, the suppression evidence was part of the record in the direct appeal of the criminal conviction. *Boyd,* 198 N.E.3d 514 at ¶ 116. Because the specific argument in the petition relied solely on evidence in the trial record, it could have been raised on appeal.

**{¶83}** On this point, Appellant reiterates his mistaken argument that if the issue was not raised at the trial level, then it could not have been raised on appeal. However, we explained his misunderstanding where first raised in a prior assignment of error. *See* A/E 5 (noting Appellant was relying on a statement which merely pointed out an appellate court incorrectly believed the claim was actually raised in the direct appeal), citing *Blanton,* 171 Ohio St.3d 19, 2022-Ohio-3985 at ¶ 58 (stating the question is whether the claim was or could have been raised).

**{¶84}** Lastly, there is no indication the judge issuing the search warrants was misled by the contested portion of the affidavits. This assignment of error is without merit.

ASSIGNMENT OF ERROR NINE

**{¶85}** Appellant's ninth assignment of error contends:

"[T]he trial judge err[ed] in denying an evidentiary hearing on Boyd['s] claim that prosecutors knowingly allowed perjury of multiple individuals at trial."

**{¶86}** As we pointed out above, assignments of error two, three, and four each contain an argument about the prosecutor allowing false testimony from victim A, victim B, and the investigating officer, respectively. *See* fn.4. Because the arguments are

reiterated within this assignment of error dedicated to the prosecutor's duty, we discuss the law on prosecutorial misconduct and incorporate our analysis of the relevant facts here.

**{¶87}** Due process is implicated where the government knowingly presents or fails to correct false testimony in a criminal proceeding if there is a reasonable likelihood it could have affected the verdict. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *State v. Iacona*, 93 Ohio St.3d 83, 97, 752 N.E.2d 937 (2001). For this type of prosecutorial misconduct claim, there is no violation unless: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false. *Iacona*, 93 Ohio St.3d at 97. In *Napue,* a postconviction relief petition sufficiently established the state knowingly failed to correct false testimony about the promise of assistance made by the prosecution to a state witness (a co-defendant previously convicted of the murder at issue), and the Court found there was a reasonable likelihood the verdict was affected by this knowingly-presented false testimony. *Napue*, 360 U.S. 264.

**{¶88}** As Appellant relies on the social media messages and police reports already discussed in assignments two through four, our same observations, which we briefly reiterate here, apply. The items raised in Appellant's brief about victim A's testimony were not shown to be false, were inconsequential, and/or were flushed out by defense counsel.

**{¶89}** As for victim B, he was extremely agitated by the time he answered a question about whether he returned to Appellant's house (after the hospital or after he was beat up) to which he responded in the negative but then attempted to continue answering while observing his words were being twisted. His testimony was abruptly discontinued without objection. Even if his answer could be viewed as false, the state was not required to have conducted pretrial investigations on outside incidents before trial in order to prepare to give a veracity opinion on any theories or questions that may arise at trial. Plus, this is not a case where the trial ended without further discussion of the topic, and the record reflects defense counsel knew about the evidence on Appellant's continued communication with victim B.

{¶90} Counsel questioned the investigating officer on the subject, and the officer agreed messages showed continued communication; he also said he would not be surprised if victim B returned to Appellant's house. Although the investigating officer initially provided a specific negative answer on a question about victim B returning to Appellant's house, he was speaking about his personal knowledge. *See Iacona*, 93 Ohio St.3d at 97 (a statement is not considered false and the state is not required to correct the statement before the end of trial where a witness's statement was a qualified one or "was, by its own terms, limited to his own personal knowledge"). He then provided an answer satisfactory to defense counsel after further prodding. Any perceived falsity was not in need of correction by the state. Thereafter, Appellant testified about victim B's return to his house.

{¶91} Under these circumstances, the issue of materiality would not require a hearing; a reasonable likelihood of a different result is not supported by sufficient operative facts, and the record disputes Appellant's claim. As the state points out: "Confusing or inconsistent statements within a state witness's testimony do not equate with the state suborning perjury." *Clark*, 7th Dist. Mahoning No. 08 MA 15 at ¶ 25. Moreover, a petition containing additional evidence can be denied without a hearing where a discrepancy was brought to light during the trial and was presented to the jury for consideration. *Shaw*, 7th Dist. Mahoning No. 13 MA 137 at ¶ 22-26.

{¶92} Additionally, as set forth in the related assignments of error, many of the allegations and substantive items cited were already evident in various parts of the record in the direct appeal. In fact, many of the allegations and items were reviewed by this court in the direct appeal, and Appellant's use of the same false testimony argument to blame the state for failing to intercede could have been raised in the direct appeal as well. *See, e.g., Boyd,* 198 N.E.3d 514 at ¶ 121 (finding no prejudice from counsel's decision to elicit the evidence from the officer; noting it was not unusual for a groomed child to continue to communicate with a sexual abuser who supplied him and his peer group with illegal products). Accordingly, those arguments are barred by res judicata. *See, e.g., Szefcyk*, 77 Ohio St.3d 93 at syllabus. This assignment of error is overruled.

<u>ASSIGNMENT OF ERROR TEN</u>

{¶93} Appellant's tenth assignment of error claims:

<u>Case No. 23 MA 0012</u>

"[T]he trial judge err[ed] in denying an evidentiary hearing on Boyd['s] claim that his trial attorney failed to question any witnesses or provide witnesses at trial."

**{¶94}** Appellant complains trial counsel failed to interview or call witnesses to testify he had a friendly relationship with victim B in the year after the April 16, 2016 incident. He says he provided his attorney with a list of witnesses to rebut victim B's testimony indicating he never returned to the Boyd residence. For supporting evidence, Appellant's brief cites a motion for a private investigator he attached to his petition, which contained a list of witnesses he wanted the investigator to interview. In arguing a failure to interview witness, his petition listed people he believed would have testified they saw victim B return to the house in the year after the incident. These claims were not supported by affidavits, and it was speculation to assume the potential testimony would be more favorable than unfavorable to the defense.

**{¶95}** The petition also cited to police reports, such as the one wherein Appellant accused victim B of burglarizing his house in November 2016 and the one wherein victim B claimed he got fireworks from Appellant's house in March 2017. The cited police reports were reviewed above in assignments of error three and four. As pointed out, we discussed the March 2017 incident in the direct appeal when addressing the search warrant arguments. *See Boyd*, 198 N.E.3d 514 at ¶ 30. We also pointed out defense counsel attempted to elicit information on victim B's continued communication with Appellant through the officer's testimony. *Id.* at ¶ 121 (finding no prejudice for ineffective assistance of counsel in failing to sufficiently impeach victim B on subsequent communications with Appellant). Finally, there is no indication defense counsel failed to attempt to interview anyone or failed to view prior counsel's notes on any interviews before trial. The failure to call a witness does not equate to a failure to investigate.

**{¶96}** Next, citing victim B's testimony that he was raped in Appellant's living room while three other juveniles (K.W., J.H., and R.C.) were sleeping on couches in the same room, Appellant urges it was unreasonable to fail to call these juveniles as witnesses. At trial, victim B said he was sleeping upstairs when J.H. and K.W. began hitting him; he then went downstairs to the living room where they all watched a movie with Appellant. (Tr. 452-454, 482-483). After detailing the rape perpetrated by Appellant, victim B said

he locked himself in the bathroom where he stayed the rest of the night, until the other juveniles awakened. (Tr. 462-463, 499-500).

{¶97} Appellant's petition argued the other juveniles could have testified victim B slept in the master bedroom to rebut victim B's testimony that he stayed in the bathroom after the rape. (His brief mentions this in the next assignment of error.) Notably, Appellant testified he unlawfully masturbated 14-year-old victim B in the living room unbeknownst to the other juveniles in the room; in fact, Appellant confirmed his encounter with victim B occurred after K.W. beat up victim B the first time and after they gathered in the living room to watch a movie. (Tr. 629, 635-636). In testifying to his belief that victim B and J.H. eventually went upstairs to sleep, Appellant said K.W. and R.C. slept on the couches in the living room with him (not upstairs with victim B). (Tr. 637-639).

{¶98} In support of his claim, Appellant's petition cited a police report from the investigation of the April 16, 2016 beatings of victim B by the other juveniles at Appellant's house. In the report generated after J.H. was arrested for abduction and assault, J.H. attempted to place all blame for beating victim B on K.W. In doing so, he claimed, "we spent the whole night upstairs away from [K.W.] so he wouldn't hit [victim B] and the next morning when we woke up we went to the creek" (where K.W. started assaulting victim B again). We note the case against J.H. proceeded through the juvenile court despite J.H.'s story, and the 2016 hearsay statement does not necessarily show what J.H. would have testified to if called to testify at Appellant's rape trial in 2020.

{¶99} There is no indication defense counsel failed to attempt to interview witnesses or to view prior counsel's notes on any interviews before trial in order to ascertain how they would testify about that night if called. Sufficient operative facts were not provided to indicate the lack of subpoenas constituted deficient performance that prejudiced the defense. In fact, in the next assignment of error, Appellant specifically says J.H. was unavailable for trial after moving out of state and K.W. died more than seven months before trial. Additionally, the length of time the victim spent in the bathroom after the sexual assault by Appellant was not outcome determinative or a serious error in trial preparation. This assignment of error is overruled.

ASSIGNMENT OF ERROR ELEVEN

{¶100} Appellant's eleventh assignment of error alleges:

"[T]he trial judge err[ed] in denying an evidentiary hearing on Boyd['s] claim that his attorney failed to file a constitutional speedy trial claim."

**{¶101}** The United States Supreme Court declined to establish exact speedy trial parameters and allowed states to prescribe a reasonable period of time consistent with the constitutional framework. *Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The State of Ohio enacted speedy trial statutes designating time requirements, tolling events, and other matters including waiver. *See* R.C. 2945.71 through R.C. 2945.73. In addition to arguing a statutory speedy trial violation under these sections, the defense may assert a constitutional speedy trial violation. A constitutional speedy trial claim considers the reasonableness of the delay by balancing four factors: (1) the length of the delay; (2) the reason for the delay; (3) how and when the defendant asserted his right to a speedy trial; and (4) prejudice to the defendant from the delay. *Barker*, 407 U.S. at 530-532; *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 38.

**{¶102}** To trigger a constitutional speedy trial analysis, the defendant must make a threshold showing of a "presumptively prejudicial" delay. *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). This trigger is generally found satisfied as the post-accusation delay approaches one year. *See id.* at fn. 1. "[T]he length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-531 (the tolerable delay increases with the complexity and seriousness of the case).

**{¶103}** A speedy trial waiver constitutes a waiver of both statutory and constitutional speedy trial rights during its period of operation. *State v. O'Brien*, 34 Ohio St.3d 7, 9, 516 N.E.2d 218 (1987). After making an express written speedy trial waiver, the defendant cannot assert a speedy trial violation unless he "files a formal written objection to any further continuances and makes a demand for trial, following which the state must bring him to trial within a reasonable time." *Id.* Where a proper revocation is filed, the period considered to ascertain reasonableness does not include the time covered by the waiver. *Id.* at 9-10 (viewing the reasonableness of the time after the revocation).

Case No. 23 MA 0012

{¶104} On January 29, 2019, Appellant waived his speedy trial rights. On December 9, 2019, he filed a pro se motion to dismiss on speedy trial grounds without demanding trial or objecting to further continuances. He thereafter filed a demand for trial with an objection to further continuances. A statutory speedy trial motion was filed by trial counsel in May 2020, seeking to invoke the state's burden to prove tolling events occurred prior to the time waiver.

{¶105} On appeal, Appellant claims trial counsel was ineffective by failing to mention constitutional speedy trial rights in the motion. His post-conviction petition said his speedy trial argument related to the two counts involving victim B. He criticized the credibility of victim B's testimony on the following topics: K.W. and J.H. were sleeping in the same room where the rape occurred; victim B stayed in the bathroom after the rape; and he did not return to the house later. Claiming prejudice from the trial delay, his petition pointed to two items as evidence outside the record.

{¶106} First, Appellant relied on the 2016 police report wherein J.H. claimed he slept upstairs with victim B to get away from K.W.'s assaultive behavior. We discussed this item in the prior assignment of error, noting the statement was made in the context of J.H.'s arrest for abducting and assaulting victim B. In alleging prejudice from the trial delay, the post-conviction petition assumed J.H. would counter victim B's testimony if called to testify at trial and claimed J.H. was unavailable to testify at trial because he moved out of state. There was no affidavit or other document supporting this claim or even an allegation as to the time frame of the alleged move from the state.

{¶107} Second, Appellant attached to his petition an obituary to show K.W. died before trial, on February 13, 2020. However, K.W.'s death was testified to at trial and thus was already part of the trial record. (Tr. 546-547). Accordingly, this particular claim could have been presented on appeal. *See State v. Sellars*, 2d Dist. Montgomery No. 28860, 2021-Ohio-1433, ¶ 15 ("the particular ineffective assistance [the defendant] alleges—counsel's failure to seek dismissal on speedy-trial grounds—could have been raised on direct appeal. * * * Therefore, res judicata barred him from raising the issue in a petition").

{¶108} Additionally, the February 13, 2020 date of death weakens the argument of prejudice from any delay occurring after his revocation of the speedy trial waiver. That

is to say, even assuming arguendo a court could use his December 2019 speedy trial motion as a revocation, Appellant became unrepresented at that time.  New counsel was appointed on January 9, 2020, and it would have been unusual to hold a trial within a month of appointment in such a complex case.  As we pointed out in denying the reopening (on Appellant's claim that appellate counsel was ineffective for failing to raise speedy trial arguments), a jury trial was reasonably set for April 2020 but had to be rescheduled under pandemic orders.  *Boyd reopening denied*, 7th Dist. Mahoning No. 20 MA 0131, 2023-Ohio-271 at ¶ 11 (thereafter, the jury trial set for August 2020 was continued *on request of the defense* until September 2020, when the trial occurred).  The length of delay after the revocation of the speedy trial waiver did not approach one year.

**{¶109}** To the extent Appellant may be referring to the time between the December 28, 2017 indictment and the January 29, 2019 time waiver (which was the time period addressed in counsel's statutory speedy trial motion), we point out the superseding indictment adding the rape charge as to victim B was filed less than three weeks before Appellant waived his speedy trial rights.  Accordingly, there was no discernible trial delay on the rape in count two prior to the waiver.

**{¶110}** As to the gross sexual imposition charge related to victim B, which was in the original December 28, 2017 indictment, we previously noted Appellant failed to recognize the various statutory tolling events prior to his time waiver.  *Id.* at ¶ 10.  Those events attributable to the defense would weigh against his constitutional speedy trial argument under the factor considering the reasons for the delay.  For instance, his first attorney withdrew a week before the March 2018 trial date.  The defense subsequently requested a continuance of the August 2018 trial date until November.  In the meantime, his second counsel withdrew in September 2018.  Even delays attributable to the state are tolling events when evaluated as reasonable.  Regardless, Appellant fails to specify or provide evidence of prejudice to the defense during the delay prior to his speedy trial waiver.  The record contained no indication defense counsel (who filed a statutory speedy trial motion) was ineffective by failing to raise constitutional speedy trial rights as well.  *See id.*

**{¶111}** Appellant did not present sufficient operative facts to require a hearing on counsel's ineffectiveness (as to speedy trial) by the addition to the record of K.W.'s 2020 obituary or J.H.'s 2016 statement. This assignment of error is without merit.

ASSIGNMENT OF ERROR TWELVE

**{¶112}** Appellant's final assignment of error contends:

"[T]he trial judge err[ed] in denying Boyd['s] motion for grand jury testimony and a private investigator."

**{¶113}** Appellant says he filed motions for grand jury testimony and for a private investigator as part of his petition for post-conviction relief. The trial court's December 22, 2022 denial of post-conviction relief did not specifically mention these motions. The state points out Appellant did not separately file the motions with the clerk for docketing until January 4, 2023, after the denial of the judgment on appeal. (He then filed a successive petition for post-conviction relief, which was denied, and is not part of this appeal.) The state emphasizes this case is the appeal of the December 22, 2022 judgment denying Appellant's initial petition for post-conviction relief.

**{¶114}** Appellant assumes the attachment of the requests to his petition makes them part of the petition and thus they became pending motions (via a different method than separately filing them for docketing). "Presumably, a petition for disclosure of grand jury testimony could be incorporated into a petition for post-conviction relief * * *." *State v. Buelow*, 2d Dist. Clark No. 06-CA-29, 2007-Ohio-131, ¶ 48. However, Appellant's requests were attached after the prayer for relief and signature page of the petition, as if they were exhibits, rather than incorporated into the petition itself. In general, attachments serve to support a motion as exhibits rather than to act as their own motions; i.e., in order to ensure a captioned document is considered a pending motion, a party should present it for date-stamping and thus docketing. *See* Civ.R. 7(B).

**{¶115}** If the unstamped motions attached to a petition could be deemed pending at the time the court ruled on the petition at issue herein, the parties acknowledge the lack of a specific ruling on such pending motions within the judgment denying the petition would be considered the implicit denial of the motions. "Generally, when the trial court enters judgment without expressly determining a pending motion, the motion is also considered impliedly overruled." *Portofe v. Portofe*, 153 Ohio App.3d 207, 2003-Ohio-

3469, 792 N.E.2d 742, ¶ 16 (7th Dist.) (presumed or implicit denial is well-established in Ohio law). *See also State v. Ahmed*, 7th Dist. Belmont No. 05-BE-15, 2006-Ohio-7069, ¶ 49 (the denial of the petition for postconviction relief implicitly denied pending motions for competency evaluation and for finding of an independent psychiatrist). Specifically, where the trial court did not explicitly rule on a motion for release of grand jury transcripts, the Ninth District concluded the motion was implicitly denied by the dismissal of the post-conviction petition because the motion was specifically directed to his petition. *State v. Leyman*, 9th Dist. Medina No. 14CA0037-M, 2016-Ohio-59, ¶ 19.

**{¶116}** A decision on whether to release grand jury transcripts is within the trial court's discretion. *State v. Brown*, 38 Ohio St.3d 305, 308, 528 N.E.2d 523 (1988) (also explaining hearsay is admissible in grand jury proceedings where the state is not expected to call every witness). Inspection of grand jury transcripts may be permitted where there exists a particularized need for disclosure that outweighs the need for secrecy. *State v. Greer*, 66 Ohio St.2d 139, 420 N.E.2d 982 (1981), paragraph two of the syllabus. Whether a defendant has demonstrated a particularized need for disclosure of grand jury transcripts is a question of fact within the trial court's discretion. *Id.* at paragraph one and three of the syllabus. The particularized need test is applied to requests for the grand jury transcripts in a post-conviction proceeding. *State v. Zimpfer*, 2d Dist. Montgomery No. 27705, 2018-Ohio-2430, ¶ 8, citing *Buelow*, 2d Clark No. 06-CA-29 at ¶ 48.

**{¶117}** Appellant says his trial counsel was unaware of the need for grand jury transcripts until it was too late to request them. He believes he would be entitled to have his conviction vacated if he was convicted of rape on different facts than presented to the grand jury for his indictment, even though the elements of the offense would remain the same. He provides no legal support for this argument.[6]

---

[6] His reply brief cites cases that are not on point. *See, e.g., State v. Troisi*, 169 Ohio St.3d 514, 2022-Ohio-3582, 206 N.E.3d 695 (where the indictment was missing an element and was not cured by the state, the Court, in a direct appeal, upheld the trial court's dismissal of the indictment but ordered the dismissal without prejudice to refiling); *State v. Vitale*, 96 Ohio App.3d 695, 645 N.E.2d 1277 (8th Dist.1994) (noting an amendment changing the identity of a crime presented a risk the defendant was convicted of an offense that was not presented to the grand jury). The indictment was not missing information, and the information Appellant cites would not change the offense. His reply also speaks of the bill of particulars, which was an issue that could have been raised in the trial court and in the direct appeal. We additionally observe the bill of particulars says Appellant used his penis to anally penetrate victim B.

{¶118}   Regarding victim A, he points out the record shows counsel did not learn until just before trial that victim A would be testifying the anal sex started with consent.  In the direct appeal, we addressed the victim's credibility based on the fact he did not specify in his written statement or when speaking to the nurse practitioner that the anal sex began with consent.  *Boyd*, 198 N.E.3d 514 at ¶ 79-80.  In denying reopening, we pointed out counsel expressed his satisfaction with the receipt of prosecution notes from the victim's recent clarification to the prosecutor and counsel specified he was not arguing for exclusion of the testimony.  *Boyd reopening denied*, 7th Dist. Mahoning No. 20 MA 0131, 2023-Ohio-271 at ¶ 16, 18.

{¶119}   At trial, a defendant may be successful in requesting in camera inspection of the grand jury transcript by the trial court where there exists major inconsistencies between the testimony of a prosecution witness and their prior statements.  *See Greer*, 66 Ohio St.2d at 147.  Where there was only a minor inconsistency between the trial testimony of the state's witness and her prior statement, the defense was not entitled to the grand jury testimony to determine the existence of any further inconsistencies, as this would not constitute a particularized need.  *Id.*, citing *State v. Patterson*, 28 Ohio St.2d 181, 277 N.E.2d 201 (1971).   Thus, even where defense counsel learns of an inconsistency issue at trial, the matter of grand jury transcripts can be immediately asserted so it can be addressed by the trial court (if defense counsel believes the transcripts are necessary).  *See id.*; *State v. Carosiello*, 7th Dist. Columbiana No. 18 CO 0018, 2019-Ohio-2705, ¶ 31 (counsel's failure to request grand jury transcripts could have been asserted on direct appeal).

{¶120}   Here, defense counsel relied on cross-examination of the victims instead, asking victim A why his statement to police did not specify the anal sex started with consent.  The lack of disclosure on initial consent was in the record and able to be raised at trial.

{¶121}   Regarding the other rape victim, the trial testimony of victim B described Appellant's actions included:   covering the victim's mouth, holding the victim down, touching the victim's penis, performing oral sex on the victim, turning him around while holding him "like the police," and applying a wet substance to the victim's anal area.  (Tr. 457-459).   The victim then testified, "I felt something go inside my butt.  * * * I felt

something go inside it and it hurt." (Tr. 459-460). The prosecutor asked if it was Appellant's penis that penetrated him; the victim said it was Appellant's penis, noting he was bleeding after the act. (Tr. 460-461).

{¶122} Victim B acknowledged he did not disclose penetration until speaking to the prosecutor. The officer confirmed that after victim B made additional disclosures during an interview with the prosecutor, the victim met with the police and provided a statement revealing he was not merely touched, as originally reported, but was raped. A superseding indictment was issued the next day, adding rape to the prior gross sexual imposition count relevant to victim B. At trial, defense counsel questioned victim B about his incremental disclosures of touching and then penetration.

{¶123} In claiming the court erred in denying access to grand jury testimony, Appellant's brief indicates he thought victim B would be testifying Appellant anally penetrated him with a finger rather than with his penis. (Appellant mentioned this briefly in a prior assignment of error as well, but this was not a claim in the body of the post-conviction petition or supported by evidence attached to the petition.)

{¶124} The identity of the object penetrating a rape victim's anus is not an element of the offense. In denying the reopening application, we pointed out the specific item penetrating the victim anally would not change the rape charge, and we noted the investigating officer testified that victim B's testimony was consistent with his statement on January 9, 2019. *Boyd reopening denied*, 7th Dist. Mahoning No. 20 MA 0131, 2023-Ohio-271 at ¶ 18, citing (Tr. 552-553).

{¶125} Most notably, Appellant's memorandum in support of his request for grand jury testimony said victim B reported "[Appellant] was giving [victim B] oral sex, stuck his finger inside [victim B's] anus, *and then had sex with him*." (Emphasis added.) The memorandum argued, "There was no testimony provided as to oral sex nor sticking a finger internally." This is substantially different from the argument he now presents. Appellant cannot change the facts and argument on appeal and argue the trial court erred based on unraised arguments.

{¶126} As for the arguments he did raise in the "motion" attached to his post-conviction petition, he did not demonstrate a review of grand jury transcripts was warranted. His claim about a lack of testimony on oral sex was incorrect, as victim B did

in fact testify at trial that Appellant performed oral sex on him. His argument on this victim's testimony failing to mention Appellant inserted his finger during oral sex was not material, as the failure to mention an additional, digital act of penetration prior to anal sex would not prejudice the defense.

**{¶127}** Appellant failed to demonstrate a particularized need for the transcripts at this stage of the case. To the extent the trial court implicitly denied a motion for grand jury transcripts when it denied Appellant's post-conviction relief petition, the court did not abuse its discretion.

**{¶128}** Regarding the motion for a private investigator, Appellant says he could not locate witnesses to obtain the required affidavits in support of his petition due to his indigence and incarceration. The state notes there is no right to a funded private investigator. As the right to file a post-conviction petition is a statutory right, the petitioner has only the rights enumerated in the pertinent statutes. *State v. Broom*, 146 Ohio St.3d 60, 2016-Ohio-1028, 51 N.E.3d 620, ¶ 28. Even an indigent petitioner in a capital case, who is entitled to appointed counsel for a timely petition, is not entitled to other funding, as the statute "does not provide for appointment of experts or investigators." *State v. Cunningham*, 2016-Ohio-3106, 65 N.E.3d 307, ¶ 36-37 (3d Dist.), quoting *State v. Monroe*, 10th Dist. Franklin No. 04AP-658, 2005-Ohio-524, ¶ 15. These courts concluded there was no error in failure to grant a motion for an investigator. *Id.*

**{¶129}** This court has also recognized "there exists no statutory provision granting petitioning defendants the right to an investigator." *State v. Trummer*, 7th Dist. Columbiana No. 96 CO 97 (Dec. 16, 1998). We explained where a trial court exercises discretion by denying motions in aid of a post-conviction petition, we will review for an abuse of discretion. *Id. See also Broom*, 146 Ohio St.3d 60 at ¶ 28 (before the statute provided for post-conviction discovery in certain situations, the trial court could nevertheless exercise discretion to grant a discovery request). We then found no abuse of discretion in denying the motion for an investigator. *Trummer*, 7th Dist. Columbiana No. 96 CO 97.

**{¶130}** In this case, the denial of funds for an investigator to collect affidavits from named individuals was not unreasonable, arbitrary, or unconscionable. Accordingly, to the extent the trial court implicitly denied a motion for a private investigator when it denied

Appellant's post-conviction relief petition, the court did not abuse its discretion. This assignment of error is overruled.

{¶131} For the foregoing reasons, the trial court's judgment is affirmed.

D'Apolito, P.J., concurs.

Hanni, J., concurs.

————————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**